Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Jeremy J. Kelley
Devin C. Curda
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7/1/24

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br><br>              v.<br><br>RACHAEL ORLIN,<br><br>                          Defendant. | Case No.:  2:24-CR-86-TOR<br><br>INFORMATION<br><br>Vio: 18 U.S.C. § 1001(a)(2)<br>       False Statements |

The United States Attorney charges:

<u>General Allegations</u>

1.  The Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act) was a federal law enacted on March 27, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and other certain expenses, through a program referred to as the Paycheck

INFORMATION-1

Protection Program ("PPP").

2.  In order to obtain a PPP, a qualifying business was required to submit a PPP application signed by an authorized representative of the business. The PPP application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP funding. In the PPP application, the applicant (through its authorized representative) was required to state, among other things: (a) its average monthly payroll expenses; and (b) its number of employees. If the applicant had no employees other than the owner, the applicant was required to provide the gross income amount from a 2019 or 2020 IRS Form 1040, Schedule C. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. Additionally, the applicant was required to certify that they were in operation as of February 15, 2020. The applicant was also required to certify that the information in the application was true and correct to the best of the applicant's knowledge.

3.  A business's PPP application was received and processed, in the first instance, by a participating lender. If a PPP application was approved, the participating lender funded the PPP using its own monies. Data from the application, including information about the borrower, the total amount of the loan, the listed number of employees, and the gross income amount, was transmitted by the lender to the Small Business Administration ("SBA"), an agency of the United States, in the course of processing the loan.

4.  On or about April 9, 2021, Defendant opened a Discover Financial Services (Discover) account ending in -0118. On or about April 23, 2021, PPP Application No. 35466689-10 was filed in Defendant's name, listing the "legal entity" as "Independent Contractors." The application was submitted to Benworth Capital, a federally insured financial institution. The application falsely represented that the company had one employee, had existed for more than 2 years, and served

INFORMATION-2

in the Outpatient Care Center industry. The application listed Rachael Orlin's true address and social security number. On or about May 17, 2021, Benworth Capital disbursed $20,833.00 to Defendant's Discover account ending in -0118. The SBA also paid a $2,500 lender fee in association with the loan. Benworth Capital has subsequently invoked the SBA's guarantee of the loan, resulting in a total loss to the SBA of $23,691.44 (the principal amount of $20,833.00, interest of $358.44, and the lender fees of $2,500).

5.  Records from Discover show that three days after the PPP funds were deposited, on or about May 20, 2021, Defendant transferred $5,000 from the Discover account to her account with Stride Bank (Stride) ending in -5890. Discover records also show that on or about May 20, 2021, $500 was withdrawn from the account through ATMs in the Spokane area and that $1,000 was withdrawn from the account via Cash App to an account in Defendant's name. On or about May 22, 2021, an additional $1,500 was transferred to the Cash App account in Defendant's name, and an additional $500 was withdrawn at ATMs at the Walmart Supercenter in Spokane Valley, where Defendant then worked. Another $500 was withdrawn via ATMs at the same Walmart Supercenter on May 24, 2024. Between on or about May 28 and May 30, 2024, $7,500 was transferred from the Discovery account to the Cash App account in Defendant's name. Cash App records show Bitcoin purchases following the transfer of money from the Discovery account. In total, by the end of May 2024, within approximately two weeks of the $20,833 deposit of PPP funds into the account, Defendant had transferred $5,000 to her Stride account, withdrawn $1,500 from ATMs, and transferred $10,000 to Cash App for the purchase of Bitcoin.

6.  On or about April 6, 2021, Unemployment Claim No. 11959253 was filed in in Defendant's name with the Indiana Department of Workforce Development. The application falsely represented, *inter alia*, that Defendant worked for CVS Pharmacy, resided in Mooresville, Indiana, and that the Defendant's place

INFORMATION-3

1  of employment had closed due to COVID-19. This application was flagged by the
2  Indiana Department of Workforce Development as a questionable identity and no
3  payments were issued. However, Defendant's Greendot account ending in -5334,
4  received $6,284.00 in payments from the Indiana Department of Workforce
5  Development in March 2021.

6      7.    Between May 2021 and September 2021, Defendant's Discover
7  account was also used to receive $9,170.00 in false and fraudulent unemployment
8  insurance claims paid by the State of New Jersey in the name of R.M. These funds
9  were spent out of the account by Defendant or were transferred to the Cash App
10 account in Defendant's name to purchase Bitcoin. An additional $713.00 in false
11 and fraudulent unemployment insurance claims had been paid by the State of New
12 Jersey into Defendant's BBVA account on or about October 19, 2020. This is the
13 same account listed on the EIDL application filed in Defendant RACHAEL
14 ORLIN's name on or about September 1, 2020. This application was declined by
15 the SBA and no funds were disbursed.

16     8.    On March 22, 2022, Defendant RACHAEL ORLIN met with two
17 agents from the United States Secret Service to discuss the United States'
18 investigation of fraudulent PPP applications. During the interview, Defendant
19 RACHAEL ORLIN denied applying for the PPP loan, and denied knowledge of
20 receiving distribution of the PPP loan. When confronted with documentation from
21 Discover showing the deposit and movement of the funds, Defendant RACHAEL
22 ORLIN admitted to receiving the money but stated that "I didn't keep a single dime,"
23 and that she never comingled the Discover account with her Stride Bank account.
24 This was a willful and materially false statement to agents and employees of the
25 United States Government, and Defendant RACHAEL ORLIN knew it was false at
26 the time it was made. Defendant RACHAEL ORLIN did in fact keep $5,000 of the
27 PPP loan amount which she transferred to her Stride Bank account ending in -5890
28 on May 20, 2021. Further, Defendant RACHAEL ORLIN spent additional PPP

INFORMATION-4

funds using a debit card associated with the Discover account.

## COUNT 1

9. The allegations set forth above in paragraphs 1 through 8 are realleged and incorporated as if fully set forth herein.

10. On or about March 22, 2022, in the Eastern District of Washington, in a matter within the jurisdiction of the United States Secret Service, Defendant RACHAEL ORLIN knowingly and willfully made false, fictitious, and fraudulent statements and representation to agents from the United States Secret Service, to wit, Defendant RACHAEL ORLIN falsely stated that she did not keep any PPP loan funds deposited into her Discovery bank account, when in fact Defendant RACHAEL ORLIN did keep and use PPP loan funds deposited into her account, all in violation of 18 U.S.C. § 1001(a)(2).

Dated this 1st day of July, 2024.

Vanessa R. Waldref
United States Attorney

Devin Curda
Jeremy Kelley
Assistant United States Attorneys

INFORMATION-5